UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JACQUELYN BLISS,                                        Case No. 09-CV-3064 (PJS/JJK)

            Plaintiff,

v.                                                                      ORDER

MORROW ENTERPRISES, INC., a
Minnesota corporation doing business as
Saavi Formalwear,

            Defendant.

---

Stephen C. Fiebiger, STEPHEN C. FIEBIGER & ASSOCIATES, CHARTERED, for plaintiff.

Mark C. Hart and Bonnie Wittenburg, COUREY, KOSANDA & ZIMMER, PA, for defendant.

Defendant Morrow Enterprises, Inc., does business under the name of Saavi Formalwear ("Saavi"). Saavi rents and sells tuxedos and other formal menswear at retail locations in Minnesota. In 2008, plaintiff Jacquelyn Bliss was hired as the assistant manager of the Saavi store at the Northtown Mall in Blaine, Minnesota. Katie Votaw managed the store and supervised Bliss.

Bliss was formally evaluated six months after she was hired. Votaw gave her a positive review, and Bliss reported that she was "ecstatic" with her job. Before long, however, the relationship between Votaw and Bliss deteriorated, Bliss grew unhappy with her position, and Bliss eventually filed a charge with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Bliss accused Saavi of having harassed and discriminated against her on the basis

of her broken right arm.  Shortly after filing her EEOC charge, Bliss was fired by Saavi,

purportedly for misusing her employee discount.

Bliss brought this lawsuit against Saavi, asserting claims under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12201 *et seq.*; the Minnesota Human Rights Act

("MHRA"), Minn. Stat. §§ 363A.01-363A.41; and Minnesota's Whistleblower Act, Minn. Stat.

§ 181.932.  Saavi now moves for summary judgment.  For the reasons that follow, the Court

grants Saavi's motion in part and denies it in part.

## I.  BACKGROUND

### A.  Bliss's Broken Arm, Hire, and Positive Work Review

Bliss was hired as the assistant manager of Saavi's Northtown store on July 7, 2008.

Danovsky Dep. Ex. 19 [Docket No. 17-34].  At the time of her interview, and throughout her

employment with Saavi, Bliss wore a cast or brace on her right arm as a result of broken bones

that she sustained in a May 2008 accident.  Danovsky Dep. 18; Bliss Dep. 13.

Bliss was hired to work 36 to 40 hours per week.  Danovsky Dep. 13-14.  At the time of

her hire, it was anticipated that she would work about 200 overtime hours per year.  Danovsky

Dep. Ex. 18 [Docket No. 17-33]; Danovsky Dep. 13.  Her job duties included supervising and

training staff, measuring customers, ringing up sales, keeping the store in order, helping Votaw

with record keeping, and making phone calls to prospective customers.  Votaw Dep. Ex. 4

[Docket No. 13 at 54].  Her job sometimes required her to lift tuxedos and mannequins.  Bliss

Dep. 24.

Because of her broken arm, Bliss's ability to engage in certain types of movements and

activities was limited.  She could not fully extend or rotate her arm.  Bliss Dep. 16.  She

experienced pain if she lifted objects that weighed more than one or two pounds, and she could not lift large or heavy objects at all. *Id*. at 28. She could not use a curling iron or lift weights with her right hand. Bliss Dep. 28, 31-32. She had difficulty turning a key in a lock, taking out trash, and doing yoga. *Id*. at 32; Bliss Ans. Interrog. No. 4 [Docket No. 17-21]. She experienced pain when she washed dishes, typed, or wrote. *Id*. For a period of time, Bliss was unable to write with her dominant right hand, and writing with her left hand was slower and less legible. Bliss Dep. 24.

As far as the record discloses, Bliss's doctors never imposed any medical restrictions on her work activities, and Bliss never requested any formal accommodations from Saavi. Bliss Dep. 19, 23. Bliss was able to perform most of her job duties with little or no assistance, Votaw Dep. 48; Megears Dep. 9-10, although she performed certain tasks — such as writing and measuring customers — more slowly because of her broken arm, Bliss Dep. 24, Megears Dep. 10. Bliss also could not lift "that many" tuxedos at once, and occasionally had to ask for assistance from co-workers — assistance that was always freely given. Bliss Dep. 24-26.

Bliss's injury was substantially more serious than a run-of-the-mill broken arm. Bliss's arm has been operated on at least six times. Bliss Dep. 14. Two or three of those surgeries occurred before Bliss began working at Saavi. Bliss Dep. 18. She had follow-up surgery on her arm in August 2008 and again in November 2008. Fiebiger Aff. Ex. II [Docket No. 17-23]. On both occasions, Saavi gave her time off. Bliss Dep. 21-22.

In January 2009, Bliss completed an employee-feedback form in connection with her six-month review. Bliss Dep. Ex. 2 [Docket No. 13 at 32-35]. Bliss told Saavi that she was very happy with her job. For example, Bliss was asked to respond to the question "[h]ow happy are

you with your [j]ob overall?" on a scale of 0 through 10, with 0 corresponding to "[n]ot happy at all" and 10 corresponding to "[e]cstatic." Bliss circled 10. *Id*. at 32. Bliss was also asked to respond to the question "[w]hy do you come to work each day?" on a scale of 0 through 10, with 0 corresponding to "[h]ave to" and 10 corresponding to "[w]ant to." Bliss circled 9. *Id*. At no point during her evaluation did Bliss give any hint that she thought that she had been the victim of any type of harassment or discrimination.

Votaw's evaluation of Bliss was also positive. Fiebiger Aff. Ex. 6 [Docket Nos. 17-27, 17-28]. Based on that positive review, Bliss received a pay increase. Morrow Dep. 58.

### B. Bliss's Meetings with Saavi Management, Her EEOC Charge, and Her Termination

Shortly after the January 2009 review, the relationship between Votaw and Bliss deteriorated markedly. In February 2009, Bliss met with Ryan Mack, the district manager who supervised Votaw. Bliss Dep. 82-83. According to Bliss, the meeting was about Votaw's behavior and the fact that Bliss felt physically intimidated by Votaw. Bliss Dep. 82-83. According to Mack, the primary focus of the meeting was Bliss's concern that she was not getting any overtime hours, although Mack concedes that Bliss did mention Votaw's conduct. Mack Dep. 26-27. Bliss said nothing to Mack about experiencing harassment or discrimination as a result of her broken arm, nor did she suggest that Votaw's behavior had anything to do with her arm. Bliss Dep. 82-83.

On April 10, 2009, Bliss met with Christopher Moorman, who, as director of operations for Saavi, supervised Mack. Bliss Dep. Ex. 1. Moorman informed Bliss that Votaw and Mack had told him that Bliss did not seem dedicated to her job. *Id*. Bliss said that she was indeed dedicated to her job, but that Votaw had been treating her unfairly, and that Mack had not done

-4-

anything to improve Votaw's behavior after Bliss's conversation with him in February.  *Id.*

According to Moorman, Bliss was focused on her lack of overtime hours.  Moorman Dep. 10-11.

There is no evidence that Bliss suggested to Moorman that any of her problems with Votaw were

related to her broken arm.  *See* Bliss Dep. Ex. 1.

Bliss met with Moorman a second time on April 13, 2009.  Bliss Dep. Ex. 1.  In between

her two meetings with Moorman, Bliss had gained access to Votaw's e-mail account and printed

out private messages that Votaw had sent to friends that managed other Saavi stores — messages

in which Votaw complained about Bliss.  Bliss provided copies of those messages to Moorman

and complained again about Votaw's behavior toward her.  Nothing in Votaw's private messages

remotely suggested that her hostility toward Bliss was related to the fact that Bliss had a broken

arm.

Bliss and Moorman then met with Votaw.  *Id.*  The three discussed Votaw's concerns

about Bliss's job performance and Bliss's concerns about Votaw's e-mails and other hostile

behavior.  *Id.*  Once again, at no point did Bliss suggest that Votaw's hostility toward her had

anything to do with her broken arm.  *Id.*

On April 15, 2009, Bliss filed a charge against Saavi with the EEOC.  Bliss alleged that

she was disabled on account of her broken arm and that she had been subjected to harassment

and discrimination at Saavi on account of that disability.  Bliss Dep. Ex. 1.  Prior to being

informed of the EEOC charge, Saavi had no idea that Bliss believed that Votaw's treatment of

her was related to her broken arm.  Mark Morrow, the owner of Saavi, filed a response with the

EEOC on April 20, 2009, denying that Bliss had been harassed or discriminated against in any

way.  Morrow Dep Ex. 14 [Docket No. 13 at 78].

On May 10, 2009, Bliss let a friend use her employee discount to purchase a tie.  Bliss Dep. Ex. 1.  Bliss had previously allowed this friend to use her discount on a retail purchase, and she knew that other employees had also allowed non-employees to use the employee discount on retail items.  *Id*.  She believed that Saavi employees were permitted to let their friends use the employee discount, provided that the Saavi employee who rang up the transaction was not the same as the Saavi employee whose discount was used.  *Id*.  Consistent with this understanding, Bliss asked sales associate Jamie Potter to ring up the transaction involving Bliss's friend.  *Id*.  Potter apparently called Votaw with concerns about the propriety of the discount, and Votaw, in turn, contacted Mack.

The following day, Morrow came to the Northtown store and, after a private conversation with Votaw, met privately with Bliss.  Bliss Dep. Ex. 1.  Morrow asked Bliss why she filed an EEOC charge.  *Id*.  Bliss responded that she was being treated unfairly and was protecting her rights.  *Id*.  Morrow next told Bliss that, by allowing a friend to use her employee discount, she had "giv[en] away something that was not [hers]."  *Id*.  Morrow then told Bliss that he had informed the EEOC that her charge was "baseless," and Morrow told Bliss that it would be months before the EEOC would even start to investigate her charge.  *Id*.  Morrow and Bliss then spoke a bit more about the substance of Bliss's EEOC charge and Bliss's supposed violation of the employee-discount policy.  *Id*.  Finally, Morrow told Bliss that she was an at-will employee, and that she was terminated effective immediately.  *Id*.

Bliss filed this lawsuit, claiming that Saavi violated the ADA and the MHRA by harassing and discriminating against her on the basis of her disability and by retaliating against her for complaining about the harassment and discrimination.  Bliss also claims that Saavi

-6-

violated the Whistleblower Act by firing her for filing an EEOC charge.[1]   Saavi has moved for

summary judgment on all of Bliss's claims.  Before addressing Saavi's motion, the Court will

describe the specific evidence on which Bliss bases her contention that she was harassed and

discriminated against because she had a broken arm.

### C.  Remarks and Treatment By Co-workers

Bliss alleges that she was the subject of offensive comments about her broken arm on

several occasions:

1.  Within the first two weeks of her employment at Saavi, Bliss met Bob Soj, a

delivery-truck driver who picked up and dropped off merchandise at numerous Saavi locations.

Bliss Dep. Ex. 1 [Docket No. 13 at 24].  Soj referred to Bliss as "handicap" and "gimpy" at their

initial meeting and throughout Bliss's employment at Saavi.  *Id.*  He also sometimes made hand

gestures to mock Bliss's broken arm.  Bliss Dep. 48.  She complained about his comments

several times to Soj himself and to her co-workers, including Votaw, Mack, and Morrow, as well

as to Morrow's predecessor, Jeff Danovsky.  Bliss Dep. Ex. 1.  Mack spoke to Soj almost

immediately after Bliss complained of his remarks.  Mack Dep. 11-12.  Mack assumed that Soj

had stopped making comments about Bliss's broken arm because Mack heard nothing further

about it.  *Id.* at 12.  However, Soj's behavior continued.  Bliss Dep. Ex. 1.

2.  In late July or August 2008 — shortly after Bliss began working at Saavi — Votaw

asked Danovsky to repeat to Bliss a remark that he had previously made to Votaw and Mack.

---

[1]Bliss also pleaded a failure-to-accommodate claim under the ADA and the MHRA.  *See* Compl. Counts I and II.  But Bliss has evidently abandoned those claims, and for good reason: Bliss admitted that she never asked Saavi for an accommodation with respect to her broken arm. Bliss Dep. 23-26.  The Court therefore dismisses with prejudice Bliss's claim that Saavi failed to accommodate her broken arm.

Bliss Dep. Ex. 1.  Danovsky compared Bliss's arm brace to the leg braces worn by the title

character in the film *Forrest Gump*, and he said that one day, Bliss would be measuring a

customer and her arm brace would fall off, just as Forrest Gump's leg braces had fallen off in the

film.  *Id*.  Danovsky told Bliss that she could then be in Saavi's version of *Forrest Gump*.  *Id*.

Danovsky and Votaw laughed, but Bliss says that she found the remark embarrassing and

offensive.  Bliss Dep. 41-42, 54.

     3.  Also in late July or August 2008, a part-time sales associate named Jenny Senden

asked Bliss what was on Bliss's arm.  Bliss Dep. Ex. 1.  Bliss responded that it was her arm

brace.  *Id*.  Senden, in Votaw's presence, then said "okay Terminator."  *Id*.  Senden's comment

was evidently a reference to a cyborg character played by Arnold Schwarzenegger in the

*Terminator* film franchise.

     4.  Finally, in April or May 2009, a sales associate named Sida Vang made a comment

about Bliss's broken arm, but Bliss cannot remember the substance of Vang's comment.  Bliss

Dep. 51-53.  When Bliss responded by giving Vang a stern look, Vang said something to the

effect of "Well, it's not like you can put a[n EEOC] charge against all of us."  *Id*. at 51.

     Bliss alleges that the harassment and discrimination that she suffered on account of her

broken arm was not limited to these remarks by co-workers, but also included Votaw's hostile

treatment of her.  As noted, Bliss's relationship with Votaw began to deteriorate shortly after

Bliss's favorable review in January 2009.  *See* Megears Dep. 18-19; Moorman Dep. 8-9.  Bliss

soon compiled a long list of grievances about Votaw:  Votaw would argue with Bliss about

scheduling issues (in particular, Bliss's lack of overtime), store policies, personnel management,

and job duties.  *See, e.g.*, Votaw Dep. 39-40, 85-86, 92-93.  Votaw sometimes spoke to Bliss in a

brusque, aggressive, or disrespectful manner.  Bliss Dep. 63.  Votaw sent derogatory e-mails about Bliss to managers at other Saavi stores.  Bliss Dep. Ex. 1.  In the e-mails, Votaw swore, complained, and gossiped about Bliss, and Votaw remarked that she wanted to "punch" Bliss.  Votaw Dep. Exs. 8-12 [Docket No. 13 at 55-60].  Votaw briefly prevented Bliss from making telephone calls to prospective customers by hiding the book containing the necessary information from Bliss for a few days.  Bliss Dep. Ex. 1.  Votaw did not give Bliss the opportunity to work a Saavi-produced fashion show that was held at a local high school.  Bliss Ans. Interrog. No. 8 [Docket No. 17-22].  And Bliss suspected Votaw of throwing a milkshake against Bliss's car after the two women had a disagreement about Bliss's hours.  Bliss Dep. 63-65.

Finally, Bliss complains that, in late July or August 2008, Bliss was not selected to represent Saavi as part of the "bridal team," a group of employees that staffs bridal fairs.  Bliss Dep. Ex. 1.  All of the other managers and assistant managers who auditioned for the team made the cut.  *Id.*  Bliss speculates that she was not selected because of her broken arm, but she admits that she does not know why she did not make the team.  Bliss Dep. 86.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

### B.  Discrimination Claims

The ADA and the MHRA forbid an employer to take an adverse action against an employee because of the employee's disability.  42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2.  Bliss does not have "direct" or strong evidence that any adverse action was taken against her because of her broken arm, and therefore Bliss's discrimination claims must be analyzed under the framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *Burchett v. Target Corp.*, 340 F.3d 510, 516-17 (8th Cir. 2003); *see also Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 n.4 (8th Cir. 2007) (explaining that federal precedent may be used to construe the MHRA).  To establish a prima facie case of disability discrimination under that framework, Bliss must show that: (1) she had a disability within the meaning of the ADA and the MHRA; (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability.  *Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1079 (8th Cir. 2009).

The Court will assume that Bliss was disabled for purposes of the ADA and the MHRA, even though the Court has its doubts.[2]  Likewise, the Court will assume that Bliss was qualified

---

[2]The Court doubts that Bliss was disabled for purposes of the ADA — either under the narrow standard that was described by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197-98 (2002), and which applies to Bliss's ADA claims insofar as they arise from events that occurred in 2008, or under the broader standard adopted by Congress in the ADA Amendments Act of 2008 ( "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, and which applies to Bliss's ADA claims insofar as they arise from events that

(continued...)

to perform the essential functions of her job as an assistant manager of a Saavi store.  The Court nevertheless dismisses Bliss's discrimination claims because no reasonable jury could find that she suffered an adverse employment action on account of her broken arm.

1.  Adverse Actions

For purposes of the ADA and the MHRA, an adverse employment action is an action that "produces a material employment disadvantage," such as a termination, a constructive discharge, a cut in salary or benefits, or a "change[] that affect[s] an employee's future career prospects." *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007) (applying *McDonnell Douglas* test in context of racial-discrimination claim).  Minor changes in working conditions, even if they are unpleasant or unwelcome, do not qualify as adverse employment actions.  *Id.*  Likewise, complaints or negative comments about an employee do not qualify as adverse employment actions, unless they lead to a material change in employment status.  *Id.* at 586.

Taking the facts in the light most favorable to Bliss, only two of the actions that she complains about — her being left off the bridal team (and thereby losing extra compensation) and her being fired — could qualify as adverse employment actions for purposes of the ADA and the MHRA.  The rest of the actions and comments about which Bliss complains are the type of workplace irritations that most employees have to endure and that do not provide the basis for a lawsuit.

---

[2](...continued)
occurred on or after January 1, 2009, ADAAA § 8; *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010).  But the Court need not decide the issue for purposes of ruling on Saavi's summary-judgment motion.

Bliss complains about a few inappropriate comments made by co-workers — as well as about a single remark made by a supervisor (Danovsky's "Forrest Gump" joke) — but none of those comments amounted to an adverse employment action. *See Higgins*, 481 F.3d at 584. Soj was a delivery-truck driver who Bliss saw only sporadically and briefly. Bliss Dep. 48-49. Senden and Vang were subordinate to Bliss, and each made only a single, mild comment to Bliss about her broken arm. There is no evidence that Soj, Senden, or Vang had any authority to take an adverse employment action against Bliss, much less that any of them did so. Likewise, Danovsky's "Forrest Gump" joke was not itself an adverse employment action because it did not result in a material disadvantage. In fact, months after Danovsky's comment, Bliss received a good review and a raise.

Likewise, none of Votaw's acts toward Bliss amounted to an adverse employment action. Mostly, Bliss complains that, as the relationship between Bliss and Votaw deteriorated, Votaw was not nice to her. But millions of employees do not get along with their bosses. As long as a boss does not *act* on her dislike of an employee by terminating the employee, reducing the employee's salary, or otherwise putting the employee at a material disadvantage, the boss has not taken an adverse employment action. There is no evidence that any of the minor changes that Votaw made to Bliss's duties — such as having other employees review daily sales reports, telling Bliss "we got it" when Bliss offered to assist around the store, or briefly hiding the call book from Bliss — resulted in a material disadvantage with respect to Bliss's employment.

2.  Causal Connection Between Adverse Actions and Broken Arm

Even if the Court is incorrect — that is, even if some of Votaw's conduct toward Bliss qualified as an adverse employment action — there is absolutely no evidence that any such action

-12-

was taken because of Bliss's broken arm.  When pressed to cite evidence of a *connection* between Votaw's actions and Bliss's broken arm, Bliss pointed to the fact that Votaw was present for, or aware of, some of the inappropriate remarks made by *others* to Bliss about her broken arm, and that Votaw on one occasion asked Danovsky to repeat his "Forrest Gump" joke in Bliss's presence.  Bliss Dep. 41.  But this is not evidence that Votaw took an adverse employment action against Bliss *because of* Bliss's broken arm.

Votaw herself never made a remark about Bliss's broken arm, Votaw never denied any of Bliss's requests for time off in connection with surgery, Votaw never interfered with Bliss's medical treatment in any way, and Votaw gave Bliss a *favorable* review despite observing Bliss work with a broken arm for six months.  Bliss Dep. 21-22.  Votaw's private e-mails — which presumably provide the best evidence of her feelings toward Bliss, as Votaw had no reason to believe that Bliss would ever see them — do not so much as hint that Votaw took any action or made any comment because of Bliss's broken arm.  *See* Votaw Dep. Exs. 8-12.  All evidence in the record suggests that Bliss's broken arm was a non-issue for Votaw.  Not surprisingly, then, until Bliss filed her charge with the EEOC, she never suggested to anyone at Saavi that Votaw's hostility toward her was connected to her broken arm, despite complaining repeatedly about Votaw.

Bliss now claims that Votaw's hostility toward her was "because of the severity of [Bliss's] arm condition," Bliss Dep. 70, and that Votaw tried to force Bliss to quit because Bliss's broken arm made her a liability to the store, Bliss Dep. 80.  Again, though, there is not a shred of evidence supporting Bliss's speculation — and even Bliss admits that her allegations are based on her subjective feelings, and not on any actual evidence.  Bliss Dep. 80-81.  Such

unsupported speculation is clearly insufficient to defeat a properly supported summary-judgment motion.  *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).

Bliss did suffer two adverse actions that were not attributable to Votaw:  Bliss was left off the bridal team, and, of course, Bliss was fired.  But a reasonable jury could not find that either of these actions was taken on account of Bliss's broken arm.

The decision not to select Bliss for the bridal team was made by a group of people from Saavi's upper management (including Danovsky and Morrow), as well as Saavi's district managers and its marketing manager.  Danovsky Dep. 17-18.  Aside from Danovsky's "Forrest Gump" comment — a comment that the Court has difficulty viewing as a manifestation of anti-disabled animus — there is no evidence that *any* of those involved in selecting the bridal team had any animus toward the disabled generally or toward Bliss specifically.[3]  Further, Bliss all but admits that she has no idea why she was left off the bridal team.  Bliss Dep. 86.  She believes that the decision was discriminatory because Danovsky told at least one other employee who was not selected why that employee did not make the cut, but Danovsky did not tell Bliss why she did not make the cut.  *Id*.  Again, though, Bliss offers nothing but speculation in resisting Saavi's summary-judgment motion.

Finally, even under *Bliss's* version of events, Bliss was not terminated because of her broken arm.  Rather, according to Bliss, Bliss was fired because she filed a charge with the EEOC.  Bliss Dep. 112 ("I felt that it [my termination] was in retaliation to filing a charge with the EEOC.").  If Bliss is correct — and, for present purposes, the Court must accept her version

---

[3]It should be noted that Danovsky was the person who interviewed and hired Bliss, and that Danovsky did so when Bliss had an obviously apparent broken arm.  Danovsky Dep. 10; Mack Dep. 9.

of events as true — then she was fired in retaliation for *complaining* of discrimination, not because her arm was broken.  Saavi is entitled to summary judgment on Bliss's discrimination claims.

### B.  Hostile-Work-Environment Claims

To prevail on a claim for hostile work environment under either the ADA or the MHRA, Bliss must show that: (1) she was disabled; (2) she suffered unwelcome harassment; (3) she was harassed because of her disability; (4) the harassment was severe or pervasive enough to affect the terms, conditions, or privileges of her employment; and (5) Saavi knew or should have known about the harassment and failed to take prompt and effective remedial action.  *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999); *Wenigar v. Johnson*, 712 N.W.2d 190, 206 (Minn. Ct. App. 2006).  Even assuming that Bliss was disabled, she cannot make the required showing.

Nearly all of the workplace harassment that Bliss complains of was from Votaw.  Even assuming that Votaw's comments and actions were severe or pervasive enough to support a hostile-work-environment claim, there is simply no evidence that any comment made or action taken by Votaw was connected in any way to Bliss's broken arm.  Because Votaw's alleged harassment of Bliss was unrelated to Bliss's broken arm, Votaw's conduct cannot give rise to a claim for a hostile work environment under the ADA or the MHRA.

With respect to the conduct that unquestionably *was* connected to Bliss's broken arm — the "Forrest Gump" joke from Danovsky and the comments that co-workers made about Bliss's broken arm — such conduct can be found to have affected the terms, conditions, or privileges of Bliss's employment only if Bliss subjectively found her work environment to be abusive and if

the conduct was "severe or pervasive enough" to create a work environment that was objectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). In determining whether a workplace is sufficiently abusive to support a hostile-work-environment claim, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Wenigar*, 712 N.W.2d at 207 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). The Eighth Circuit has "repeatedly emphasized that anti-discrimination laws do not create a general civility code. Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003).

No reasonable jury could find that the conduct of Bliss's co-workers created a hostile work environment. Throughout the course of this litigation, Bliss has been adamant that she subjectively found the remarks by Soj, Danovsky, Senden, and Vang to be abusive. *See, e.g.*, Bliss Dep. 40-41. But almost all of those remarks were made before Bliss told Saavi during her six-month review that she was "ecstatic" about her job and that she came to work each day because she wanted to, not because she had to. Bliss Dep. Ex. 2. In light of what Bliss said about her job at the time she held that job, it is difficult to believe that a jury would accept Bliss's current contention that she found her work environment to be abusive.

More importantly, the remarks about Bliss's broken arm were neither severe nor pervasive. Danovsky's "Forrest Gump" joke, Senden's "Terminator" comment, and Vang's statement about Bliss's broken arm were all one-time occurrences. The comments by Danovsky and Senden were mild — indeed, they reflect little or no anti-disabled animus — and Vang's

-16-

comment was so innocuous that Bliss cannot even recall what she said. These comments do not remotely approach the type of harassment that entitles an employee to recover under the ADA or the MHRA.

Soj's behavior was somewhat worse. He persisted in calling Bliss "gimpy" and "handicap" and in making mocking hand motions in her presence throughout Bliss's time at Saavi. But ongoing teasing of this nature is insufficient to support a hostile-work-environment claim if it is unaccompanied by exacerbating circumstances. *E.g., Shaver*, 350 F.3d at 721-22. No such exacerbating circumstances exist here. Bliss did not regularly work with Soj. He was a delivery-truck driver who dropped off and picked up tuxedos. Bliss saw him only sporadically and for no more than 25 minutes at a time. Bliss Dep. 48-49. Soj had no authority over Bliss. He did not utter words that were implicitly or explicitly threatening or particularly humiliating, and his comments did not inflict severe psychological distress on Bliss. Soj's teasing — though certainly inappropriate — fell short of the kind of severe or pervasive behavior that supports a claim of a hostile work environment.

Finally, there is no evidence that Saavi failed to take prompt and effective remedial action with respect to any harassment that it knew, or should have known, was occurring. Bliss complained only about Soj's comments, and not about the comments of the other employees. After Bliss complained about Soj's comments, Mack promptly spoke to Soj about the importance of treating fellow employees with respect. Mack reasonably assumed that his response had fixed the problem because, in his subsequent conversations with Bliss, she did not say anything about Soj. Bliss spoke with Saavi supervisors numerous times about her conflict with Votaw, but, again, there is no evidence that she ever suggested that the conflict had anything to do with her

broken arm, and there is no reason why Saavi should have connected Bliss's complaints about Votaw with Bliss's broken arm.  Saavi is entitled to summary judgment on Bliss's hostile-work-environment claims.

## C.  Retaliation Claims

The ADA and the MHRA forbid an employer to retaliate against any employee because the employee complained about discrimination.  42 U.S.C. § 12203(a); Minn. Stat. § 363A.15. To establish a prima facie claim of retaliation, Bliss must show that: (1) she engaged in statutorily protected activity; (2) a materially adverse action was taken against her; and (3) the materially adverse action was taken in retaliation for her engaging in protected activity.  *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (ADA test); *Heisler v. Metro. Council*, 339 F.3d 622, 632 n.6 (8th Cir. 2003) (claims under the MHRA follow the ADA test). If Bliss can establish a prima facie case, the burden shifts to Saavi to show a legitimate, non-retaliatory reason for the allegedly retaliatory action.  *Stewart*, 481 F.3d at 1043.  If Saavi can make such a showing, the burden shifts back to Bliss, who must then show that Saavi's proffered reason is pretextual.  *Id*.

Saavi does not dispute that Bliss engaged in protected conduct when she filed the EEOC charge or that Saavi took an adverse action against Bliss when it fired her.[4]  Saavi contends,

---

[4]As the Court has already explained, there is no evidence that Bliss asked Saavi for an accommodation, and therefore Saavi could not have fired her in retaliation for making such a request.

To the extent that Bliss bases her retaliation claims on an allegation that Saavi retaliated against her for complaining *to Saavi* about discriminatory conduct, Bliss's claim must fail.  Bliss did not complain to Saavi about discriminatory conduct by Votaw, Danovsky, Senden, or Vang. *See, e.g.*, Bliss Dep. 82-83; Bliss Dep. Ex. 1.  Bliss did complain to Saavi about discriminatory

(continued...)

however, that Bliss has no evidence of a causal connection between her filing of the EEOC charge and her termination.  Saavi also contends that it has presented evidence of a legitimate, non-retaliatory motive for firing Bliss — specifically, her alleged violation of the employee-discount policy.  Therefore, Saavi argues, it is entitled to summary judgment on Bliss's retaliation claims.

The Court disagrees.  Bliss was fired less than one month after Saavi was served with the EEOC charge.  Admittedly, this type of temporal evidence, standing alone, is not sufficient to permit a jury to find a causal connection.  *See, e.g.*, *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (passage of one month between protected activity and termination is not, on its own, sufficient to establish a causal connection).  But here the temporal evidence does not stand alone.  If the Court credits Bliss's version of her conversation with Morrow — a version that is largely corroborated by Morrow — then there is additional evidence that Morrow fired Bliss in retaliation for her filing the EEOC charge.  According to Bliss, Morrow began their conversation by asking her why she filed the EEOC charge.  Bliss Dep. Ex 1 at 8.  Morrow later discussed her alleged violation of the employee-discount policy, but kept returning to the subject of the EEOC charge — telling Bliss that he was disappointed that she had not given Saavi a chance to address her concerns and that her charge was baseless.  *Id*.; Morrow Dep. 65-68. Taking into account *both* (1) the temporal connection between the filing of the EEOC charge and Bliss's firing *and* (2) Morrow's comments to Bliss at the time that he fired her, a reasonable jury could find that Bliss was fired in retaliation for filing the EEOC charge.

_____

[4](...continued)
conduct by Soj, but there is no evidence that Bliss's dismissal had anything to do with her complaints about Soj.

Saavi has identified a legitimate, non-retaliatory reason for the allegedly retaliatory action. Specifically, Saavi contends that Bliss violated the employee-discount policy, an act that Saavi considers tantamount to theft. But based on the limited information that the Court has been given about the policy, the Court cannot find that Bliss *violated* the policy, much less that a reasonable jury must find that she was *fired* for violating the policy. Curiously, Saavi did not submit a copy of the employee-discount policy to the Court, and Saavi employees gave conflicting descriptions of the policy at their depositions. For example, Mack testified that only employees were entitled to a discount on sales, and that only employees, their family members, and their significant others were entitled to a discount on rentals. Mack Dep. 60. Danielle Megears, one of the retail staff at Bliss's store, testified that her father had used her employee discount in purchasing a suit, and that his use of the discount was permitted under the policy. Megears Dep. 30. Bliss testified that she had previously let a friend use her employee discount when making a purchase, but only after she was told by a store manager that she was permitted to do so. Bliss Dep. 106. On this record, a reasonable jury could find that the reason given by Saavi for Bliss's dismissal was pretextual.

### D.  Whistleblower Claim

Bliss contends that the same events that give rise to her retaliation claims also give rise to a claim under the Whistleblower Act. The Whistleblower Act prohibits an employer from firing an employee because the employee, acting in good faith, reported a suspected violation of a federal or state law. Minn. Stat. § 181.932, subd. 1.

Bliss essentially concedes that, insofar as her whistleblower claim alleges that she was fired for reporting a violation of the MHRA, her claim is preempted by the exclusive-remedy

provision of the MHRA.  *See Williams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485-86 (Minn. 1996); Minn. Stat. § 363A.04; Bliss Br. 52.  But Bliss contends — and Saavi does not dispute — that insofar as her whistleblower claim alleges that she was fired for reporting a violation of the ADA, her claim is not preempted.  *See Amin v. Flagstone Hospitality Mgmt., LLC*, No. 03-1181 (JRT/JSM), 2005 WL 3054599, *6 (D. Minn. Nov. 14, 2004) (whistleblower claim is not preempted by a 42 U.S.C. § 1981 claim arising from the same facts).

The elements of a whistleblower claim are identical to the elements of an ADA retaliation claim.  *See Amin*, 2005 WL 3054599 , at *6; *Rothmeier v. Inv. Advisors, Inc.*, 556 N.W.2d 590, 592 (Minn. Ct. App. 1996).  For the reasons the Court has already explained, a reasonable jury could find that Bliss was fired in retaliation for filing an EEOC charge.  Thus, the Court denies Saavi's summary-judgment motion with respect to Bliss's whistleblower claim.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of defendant Morrow Enterprises, Inc., for summary judgment [Docket No. 9] is GRANTED IN PART and DENIED IN PART as follows:

1.  The motion is GRANTED with respect to all of the claims of plaintiff Jacquelyn Bliss, except for her claim that defendant violated the Americans with Disabilities Act, the Minnesota Human Rights Act, and the Whistleblower Act by firing her in retaliation for filing a disability-discrimination charge with the Equal Employment Opportunity Commission.  As to that claim, defendant's motion is DENIED.

2.  Except for plaintiff's claim that defendant violated the Americans with Disabilities Act, the Minnesota Human Rights Act, and the Whistleblower Act by

firing her in retaliation for filing a disability-discrimination charge with the Equal

Employment Opportunity Commission, plaintiff's claims are DISMISSED WITH

PREJUDICE AND ON THE MERITS.

Dated: June 28, 2011                          s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge